UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

J.S., et al.,

                              Plaintiffs,

        v.                                                **DECISION AND ORDER**
                                                           00-CV-513S

Attica Central Schools,

                              Defendant.

## I. INTRODUCTION

Plaintiffs, disabled  former students in the Attica Central School District ("Defendant" or "the District"), commenced this action under the Individuals with Disabilities Education Act ("IDEA"), Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Section 504"), and related New York State education laws, alleging that the Defendant has violated its statutory and regulatory obligations to students who are educationally, physically, or otherwise disabled or suspected of being disabled. Plaintiffs seek equitable relief, costs, and attorney's fees[1].

Presently before this Court are Defendant's Motion for Summary Judgment, (Docket No. 189), Defendant's Motions to Dismiss Parties (Docket Nos. 193, 208), and Plaintiffs' Motion for Partial Summary Judgment (Docket No. 194). In addition, Defendant has filed a Motion in limine to Preclude Evidence (Docket No. 125) and a Motion to Decertify the Class (Docket No. 160).

For the reasons that follow, Defendant's motions to dismiss parties and to preclude evidence are denied (Docket Nos. 125, 193, 208), as is Defendant's motion for class

---

[1] Plaintiffs initially sought compensatory damages in their Complaint, but later withdrew that request.  (Compl. ¶ 6(d); Pl. Aff. dated 10/12/2000, ¶ 13).

decertification (Docket No. 160).

Further, Defendant's motion for summary judgment (Docket No. 189) is granted in part and denied in part. Plaintiffs' motion for partial summary judgment (Docket No. 194) is denied.

## II. BACKGROUND

### A.    Facts

Plaintiffs were students attending public schools within the Attica Central School District or students entitled to receive educational and other services from the District. (Compl., ¶ 2, reproduced at Docket No. 189-3). Plaintiffs are/were educationally, physically or otherwise disabled or suspected of being disabled. (Compl., ¶ 2). This action is brought on behalf of these students by their parents and natural guardians. (Compl., ¶ 2).

Plaintiffs bring their claims under the IDEA, Section 504, and corresponding state laws designed to ensure an appropriate public education or reasonable accommodation at public expense for disabled school children. (Compl., ¶¶ 105-118). Plaintiffs allege systemic violations of the law in the School District including the failure to provide access to school facilities for students with physical disabilities, and the failure to promptly evaluate and appropriately place children with disabilities or suspected disabilities in the least restrictive environment. (Compl., ¶¶ 3-5).

There are no remaining original student Plaintiffs in the case.[2] (Def. Aff. dated 2/18/2011 (Docket No. 193); Def. Aff. dated 8/19/2011 (Docket No. 208-1)). The facts

---

[2] Since the commencement of this action, S.H. died tragically from an epileptic seizure, and J.S., C.H., K.Z., D.E., and C.Z. "aged out" of school. (Def. Aff. dated 2/18/2011; Def. Aff. dated 8/19/2011). None of the six representative Plaintiffs have been formally removed from this lawsuit.

relevant to the original Plaintiffs, as set forth in the Complaint, are as follows:

Plaintiff J.S., or John, attended Attica Middle School in a class with twelve students, one special education teacher, and one aide. Attica Middle School is the only middle school in the School District. According to the School District's Committee on Special Education, John was multiply disabled. He had cerebral palsy, was mentally retarded, and had perceptual/visual motor deficits. These conditions made him physically handicapped, mobility-impaired, and dependent upon a wheelchair. (Compl., ¶¶ 15-18).

John was able to get in and out of the middle school only through the shop class, and he did not have adequate access to the school's computer room, nurse's office, weight room, home economics room, or swimming pool. He also did not have adequate or safe toilet access. (Compl., ¶¶ 19-26)

The District did not provide John with an appropriate and adequate Individualized Education Program. It lacked satisfactory goals and objectives, adaptive physical education, mobility training, and means to deal with John's visual/perception deficits. The District did not provide John with appropriate transition services or sufficient progress reports, and it failed to evaluate him and provide assistive technology services. John was not provided an education in the least restrictive environment. (Compl., ¶¶ 28-32).

S.H., or Sally, attended Prospect Elementary School in a class with twelve students, one special education teacher, and one aide. She also was classified as multiply disabled. She had cerebral palsy with seizure disorder, was mentally retarded, visually impaired, speech impaired, and was largely non-verbal. She was physically handicapped, mobility-impaired, and dependent upon a wheelchair. She used "Total Communication" sign language and was assisted with equipment called a Dynavox. (Compl., ¶¶ 33-36).

3

Sally entered the elementary school through a ramped door that someone else had to open for her. She was able to reach only the first floor of the three-story school. She could not  go to the basement where the cafeteria was located, so she and her classmates ate lunch in their classroom. She had no access to the music room, the computer lab, or the school playground. Sally did not receive sufficient physical and occupational therapy, and her education was not conducted in the least restrictive environment. (Compl., ¶¶ 38-47).  As stated earlier, Sally passed away from an epileptic seizure during the course of this lawsuit.

C.H., or Charles, attended Attica Senior High School in regular education classrooms. He was classified as learning disabled, and he received resource room services and poorly implemented testing modifications. The School District did not develop an adequate transition plan for Charles or provide him with special education services that would have allowed him to benefit from his educational program. School staff were not informed of or trained in implementing Charles's Individualized Education Program. (Compl., ¶¶ 49-56).

C.Z., or Caroline, attended Prospect Elementary School. Although she received special services from the School District, she was not classified under the IDEA. Caroline was tested and denied special education because her scores were too high, but her parent was not given a copy of the test results. Caroline was denied services she should have received as a learning disabled child. (Compl., ¶¶ 57-59).

K.Z., or Ken, attended Sheldon Elementary School as a fifth grade student in a regular education classroom. The School District's Committee on Special Education declassified him from his classification as speech impaired. (Compl., ¶¶ 60-62).

4

D.E., or Dennis, attended Attica Senior High School. He had a medical condition which defines him as a person with a disability under Section 504 of the Rehabilitation Act. Following his request, a hearing was held which resolved his complaints with respect to his condition. (Compl., ¶¶ 163-67).

## B.    Procedural History

On June 14, 2000, Plaintiffs filed a Complaint and a Motion to Certify a Class on behalf of students who were educationally, physically, or otherwise disabled or suspected of being disabled. The Complaint alleged that the Defendant school district had failed to provide the proper facilities, programs, and services to its disabled students. Plaintiffs seek injunctive relief declaring Defendant in violation of its statutory obligations, and requiring that the Defendant: (1) make its facilities accessible to all students with disabilities, (2) identify and evaluate all potentially disabled students, and (3) implement the appropriate services and educational placements for disabled students. (Compl., ¶¶ 1-6, 15-67, 77-108).   Defendant filed a Motion to Dismiss the Complaint for lack of subject matter jurisdiction (Docket No. 7), which this Court denied on September 30, 2001. (Docket No. 20). Defendant appealed. On February 11, 2003, at this Court's request, Plaintiffs withdrew the class certification motion, without prejudice, with leave to re-file nunc pro tunc, pending a determination by the Second Circuit that this Court had subject matter jurisdiction in this case (Docket No. 34). The Second Circuit Court of Appeals affirmed this Court's decision and remanded the case for further proceedings. J.S. ex rel. N.S. v. Attica Central Schools, 386 F.3d 107 (2d Cir. 2004).

This Court then granted Plaintiffs' renewed Motion to Certify the Class (Docket No. 51), finding that Plaintiff had met the requirements for class certification under Federal Rule

23(a) and (b)(2), and ordering that the class consists of:

> children between the ages of 3 to 21 residing in the Attica
> Central School District, present and future, who are and should
> be classified as disabled per the definition in the IDEA or the
> Rehabilitation Act, but who are denied their rights pursuant to
> said statutes, either substantively or procedurally, due to
> inadequacies in the defendant school district.

J.S. ex rel. N.S. v. Attica Central Schools, No. 00-CV-513S, 2006 WL 581187, *7

(W.D.N.Y. March 8, 2006) (Docket No. 61, p. 13). Included in the Court's order was a

process for Plaintiffs to prepare a notice to class members which would include an "opt-out"

provision. (Docket No. 61, p. 12).

Defendant moved on October 19, 2006 to amend the Court's class certification

order to remove the "should be classified" students. (Docket. No. 76). That motion was

denied on September 23, 2007. (Docket No. 99).

Following years of extensive motion practice, multiple status conferences, and the

exchange of discovery documents, Defendant filed motions for dismissal of certain named

plaintiffs (Docket Nos. 193, 208), and for summary judgment (Docket No. 189). Also

pending before this Court are Defendant's Motion to Decertify the Class (Docket No.160)

and Motion to Preclude Evidence (Docket No.125).

Plaintiffs oppose all of Defendant's motions (Docket Nos. 128, 176, 200-201) and

have themselves moved for partial summary judgment as to liability on 9 "Contentions".[3]

(Docket No. 194).

At this juncture, Plaintiffs claims can be distilled into two causes of action: (1)

---

[3] Plaintiffs' Contentions stem from their Answers to Defendant's Interrogatories submitted May 15, 2009.  (Attached as Exhibit "A" to Def. Mot. to Decertify (Docket No. 160)).

deprivations of a free appropriate public education ("FAPE") arising under IDEA relating to accommodations, services, and procedural and substantive deficiencies in the Individualized Education Programs ("IEPs"), and (2) deprivations of FAPE arising under Section 504 of the Rehabilitation Act relating to accessibility of the District's facilities for physically disabled students.

Plaintiffs seek a declaration that for the 2006-2007 school year[4], the policies, procedures, customs, patterns, and/or practices of the Attica Central Schools deprived the Plaintiffs of their constitutional and/or statutory rights, were illegal and/or invalid, and in contravention of the duty to assure that Plaintiffs and similarly situated children received a free appropriate education.

## III. DISCUSSION

### A.   Class Certification

This Court will first address Defendant's Motion to Decertify the Class. (Docket No. 160).

"Even after a [class] certification order is entered, the [district] judge remains free to modify it in the light of subsequent developments in the litigation." General Tel. Co. of the Southwest v. Falcon, 457 U.S. 147, 160 (1982). Thus, a district court that has certified a class under Rule 23 "can always alter, or indeed revoke, class certification at any time before final judgment is entered should a change in circumstances" render a class action no longer appropriate. Cordes & Co. Financial Services, Inc. v. A.G. Edwards & Sons, Inc., 502 F.3d 91, 104, n.9 (2d Cir. 2007); see also Daffin v. Ford Motor Co., 458 F.3d 549, 554

---

[4] Discovery in this case was limited to the 2006-2007 school year.  (Docket No. 194-8, p. 2).

(6th Cir. 2006) ("If at a subsequent point in the litigation the district court determines that [circumstances have materially changed], the district court may consider at that point whether to modify or decertify the class"); In re Integra Realty Resources, Inc., 354 F.3d 1246, 1261 (10th Cir. 2004) ("a trial court overseeing a class action retains the ability to monitor the appropriateness of class certification throughout the proceedings and to modify or decertify a class at any time before final judgment"); accord Lee v. City of Columbus, Ohio, No. 2:07-CV-1230, 2008 WL 3981459, at *3 (S.D.Ohio Aug.22, 2008), modified on other grounds, 2008 WL 5146504 (S.D.Ohio Dec.5, 2008).

Like the initial decision whether to certify a class, the question of whether to decertify a class is committed to the discretion of the district court. Wu v. MAMSI Life & Health Ins. Co., 256 F.R.D. 158 (D.Md. 2008). "In considering the appropriateness of decertification, the standard of review is the same as a motion for class certification: whether the Rule 23 requirements are met." Marlo v. United Parcel Service, Inc., 251 F.R.D. 476, 479 (C.D.Cal. 2008); see also East Maine Baptist Church v. Union Planters Bank, N.A., 244 F.R.D. 538, 541 (E.D.Mo. 2007) ("In considering a defendant's motion for decertification, the Court follows the legal standard required for class certification ... and focuses its inquiry as to whether or not the requirements of Rule 23 have been met.")

"[T]he four prerequisites of Rule 23(a) [are]: numerosity, commonality, typicality, and adequacy of representation." Marisol A. v. Giuliani, 126 F.3d 372, 375 (2d Cir. 1997). In addition, "the party seeking certification must qualify under one of three criteria set forth in Rule 23(b)." Id. at 376; Comer v. Cisneros, 37 F.3d 775, 796 (2d Cir. 1994).

In the instant case, this Court determined in its March 7, 2006, Decision and Order that Plaintiffs met their burden of demonstrating the four requirements of Rule 23(a):

commonality ("Plaintiffs have articulated a common issue of law–namely, whether the School District is violating the substantive and procedural rights of the proposed class members."); typicality ("The fact that each named Plaintiff suffered a distinct harm as a result of those district-wide violations does not render his or her claim atypical."); adequacy of representation ("There is no indication that the interests of the proposed class representatives are antagonistic to those of the proposed class . . . . Moreover, the record reflects that Plaintiffs' attorneys are experienced with civil rights and class action litigation in Federal Court."); and numerosity ("This Court finds that the number of students that are considered disabled in the School District makes joinder of the proposed class members impracticable. Additionally, since the proposed class includes future members who are necessarily unidentifiable, which makes joinder even more impracticable, numerosity must be recognized."). J.S., 2006 WL 581187 at *4-*6.

This Court also found that plaintiffs had met the certification requirements of Rule 23(b)(2), which provides for certification when "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed.R.Civ.P. 23(b)(2).

In support of their motion to decertify, Defendant argues that three of the four of Rule 23(a) requirements–commonality, typicality, and adequacy of representation–are not met because the evidence in the record does not support those elements.[5] (Def. Mot. to Decertify (Docket No.160-4), p. 41-42). However, Defendant's contentions are no different

---

[5] Defendant does not challenge this Court's determination related to numerosity.

than those raised in its Memorandum in Opposition to Plaintiffs' Motion for Class Certification (Docket No. 56) in 2005, which this Court rejected. (Docket No. 61). Defendant demonstrates no change in circumstances which would warrant decertifying the class based on the arguments previously presented.

Defendant urges that developments in legal authority since class certification was granted warrant reconsideration of this Court's grant of class certification. Defendant cites to In re Public Offerings Security Litigation, 471 F.3d 24 (2d Cir. 2006) ( "In re IPO"), which clarified the procedures and findings necessary for a district court to maintain class certification.[6] According to Defendant, Plaintiff fails to satisfy the requirements set forth in In re IPO.

Therein, the Second Circuit determined:

> (1) a district judge may certify a class only after making determinations that each of the Rule 23 requirements has been met; (2) such determinations can be made only if the judge resolves factual disputes relevant to each Rule 23 requirement and finds that whatever underlying facts are relevant to a particular Rule 23 requirement have been established and is persuaded to rule, based on the relevant facts and the applicable legal standard, that the requirement is met; (3) the obligation to make such determinations is not lessened by overlap between a Rule 23 requirement and a merits issue, even a merits issue that is identical with a Rule 23 requirement; (4) in making such determinations, a district judge should not assess any aspect of the merits unrelated to a Rule 23 requirement; and (5) a district judge has ample discretion to circumscribe both the extent of discovery concerning Rule 23 requirements and the extent of a hearing to determine whether such requirements are met in order to

---

[6] The Second Circuit previously held that "some showing" of meeting Rule 23 requirements was sufficient, Caridad v. Metro–North Commuter Railroad, 191 F.3d 283, 292 (2d Cir. 1999), and later that "factual findings" were required to determine whether the elements of Rule 23 were satisfied. Parker v. Time Warner Entertainment Co., 331 F.3d 13, 21 (2d Cir. 2003) (Concluding that the district judge had made "assumptions of fact" concerning the size of the class, and remanding for "findings of fact.")

> assure that a class certification motion does not become a pretext for a partial trial of the merits.

In re IPO, 471 F.3d at 41.

Defendant contends that the original certification Order (Docket No. 61) does not contain any rulings or evidentiary determinations of evidence to support class certification. This Court disagrees.

In re IPO instructs that a district judge "must receive enough evidence, by affidavits, documents, or testimony to be satisfied that each Rule 23 requirement has been met. Id. This Court, in its previous Decision and Order, required Plaintiffs to "present 'sufficient factual information to enable the Court reasonably to permit the [case] to continue as a class action under Rule 23.'" J.S., 2006 WL 581187 at *3 (quoting Boyland v. Wing, No. 92 Civ. 10002(DGT), 2001 WL 761180, at *11 (E.D.N.Y. Apr. 6, 2001)). It then determined that class certification under Rule 23(a) and (b)(2) was appropriate and that Plaintiffs had presented sufficient factual information after reviewing Plaintiffs' submissions, which included the affidavits of Bruce A. Goldstein dated June 14, 2000 and June 27, 2005, affidavits of N.S., J.H., K.Z., S.E., and Melinda Saran, and a reply affidavit with exhibit. The Court also reviewed Defendant's countervailing evidence consisting of the affidavit of Jeanne Bates and a memorandum of law with exhibits in opposition to the motion. When this Court considered Plaintiffs' motion for class certification, its review was based on all the relevant evidence available at that point in time (pre-discovery, and prior to In re IPO). The evidence was sufficient to satisfy the Court that each Rule 23 requirement had been met, and this Court therefore relied on "enough evidence, by affidavits, documents, or testimony," to meet the standard on which Defendant relies. In re IPO, 471 F.3d at 41.

11

Defendant fails to present new facts or legal argument in support of its motion to decertify the class.  In essence, Defendant asks this Court to re-visit its initial grant of class certification (Docket No. 61) and its previous decision to retain the class definition (Docket No. 99), on the ground that this litigation addresses individualized violations of individual children and should not have been collectively maintained as a class action lawsuit. There is no reason for this Court to alter its original decision as to typicality, commonality, and adequacy of representation. Indeed, "decertifying or redefining the scope of a class should only be done where defendants have met their 'heavy burden' of proving the necessity of taking such a 'drastic' step." In re Vivendi Universal, S.A. Securities Litigation, No. 02 Civ. 5571(RJH)(HBP), 2009 WL 855799, *3 (S.D.N.Y. March 31, 2009) (quoting Gordon v. Hunt, 117 F.R.D. 58, 61 (S.D.N.Y. 1987)).

Defendant has not met its burden here and the Motion to Decertify is therefore denied.

**B.    Summary Judgment**

Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c). A fact is "material" if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  An issue of material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id.

In IDEA cases however, a reviewing court "shall receive the records of the administrative proceedings, shall hear additional evidence at the request of a party, and,

basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C). Therefore, "[i]nstead of dispute resolution, a motion for summary judgment can serve as an aid to the court within a statutory scheme whose purpose is to ensure that children with disabilities receive the educational benefits to which they are entitled." T.Y. v. New York City Dept. of Educ., 584 F.3d 412, 418 (2d Cir. 2009) (citing Lillbask ex rel. Mauclaire v. State of Conn. Dept. of Educ., 397 F.3d 77, 83, n.3 (2d Cir. 2005)). "The court's inquiry is twofold: first, it reviews the [school district's] compliance with IDEA procedures and, second, the court determines if the IEP created through those procedures was 'reasonably calculated to enable the child to receive educational benefits.'" Id. (quoting Lillbask, 397 F.3d at 83, n. 3). "Though the court must show deference to administrative board findings, the court is also empowered to conduct an independent review of the record as a whole and even hear additional evidence." Id. (citing 20 U.S.C. § 1415(i)(2)(C); Bd. of Educ. v. Rowley, 458 U.S. 176, 206 (1982)).

In this case the exhaustion requirement was waived, thereby depriving the Court of the benefit of a full administrative record. Accordingly, this Court shall exercise caution and apply the traditional summary judgment standard. See Alleyne v. New York State Educ. Dept., 691 F.Supp.2d 322, 330 (N.D.N.Y. 2010) (Court proceeded under traditional standard for summary judgment where full administrative record was absent and parties argued motion under normal summary judgment standard).

## 1.    IDEA Claims

The IDEA was enacted to ensure that disabled children are provided a free appropriate public education, or FAPE. See Frank G. v. Bd. of Educ. of Hyde Park, 459

F.3d 356, 363 (2d Cir.2006). FAPE is defined as special education and related services, provided at public expense, which meet the standards of the State educational agency and are provided in conformity with an Individualized Education Program ("IEP"). 20 U.S.C. §§ 1401(9), 1414(d). A school district, such as the Defendant here, meets its obligation to offer FAPE by having a Committee on Special Education ("CSE"), which must include the parent(s), convene prior to each school year and prepare an IEP for the student, setting forth the goals and objectives for the student, and recommending an educational program and related services to attain those goals and objectives. 20 U.S.C. § 1414(d). The statute and its implementing regulations provide a complex scheme by which evaluations are conducted and educational programs implemented. See 20 U.S.C. § 1414; 34 C.F.R. §§ 300.320-350, 300.500-543.

The purpose of the IDEA is to "ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for employment and independent living." 20 U.S.C. § 1400(d)(1)(A). To facilitate this goal, the IDEA requires the educators and parents of a disabled student to jointly develop an IEP for each year of the child's education. Polera v. Bd. of Educ. of the Newburgh Enlarged Sch. Dist., 288 F.3d 478, 482 (2d Cir. 2002). The IEP is the "centerpiece of the IDEA's education delivery system." T.Y., 584 F.3d at 415 (internal quotation omitted).

If a parent believes that the education program proffered by a school district does not offer a FAPE, IDEA provides "procedural safeguards that enable parents and students to challenge the local educational agency's decisions." Murphy v. Arlington Cent. Sch. Dist., 297 F.3d 195, 197 (S.D.N.Y. 2002). A parent may file a due process complaint

concerning "any matter relating to identification, evaluation or educational placement of the child, or the provision of a free appropriate public education." 20 U.S.C. 1415(b)(6)(A); see also 34 C.F.R. 300.507(a)(1) ("A parent or a public agency may file a due process complaint on any of the matters described in § 300.503(a)(1) and (2) (relating to the identification, evaluation or educational placement of a child with a disability, or the provision of FAPE to the child.)"). School districts may also request due process hearings relating to, among other things, the educational placement of a student or the provision of FAPE to the student. 20 U.S.C. § 1415(b)(6); N.Y. Educ. Law § 4404(1).

Under the IDEA, a decision made in an impartial due process hearing may be appealed to a second level of administrative review. See 20 U.S.C. § 1415(i)(1). Under the New York Code of Rules and Regulations, that appeal is to the State Reviewing Officer ("SRO"). See 8 N.Y.C.R.R. § 200.5(j). Actions brought under the IDEA must normally adhere to exhaustion requirements. Heldman v. Sobol, 962 F.2d 148, 158 (2d Cir.1992). Exhaustion is also required when relief is sought under other federal statutes but is also available under the IDEA. See 20 U.S.C. § 1415(l); Hope v. Cortines, 872 F.Supp. 14, 19 (E.D.N.Y.1995), aff'd, 69 F.3d 687 (2d Cir.1995). However, the case law has carved out an exception to the exhaustion requirement when exhaustion would be futile because administrative procedures do not provide adequate remedies. See J.G. v. Bd. of Educ., 830 F.2d 444, 447 (2d Cir.1987).

In its Motion to Dismiss (Docket No. 7), Defendant argued, inter alia, that Plaintiffs did not exhaust their administrative remedies and that this Court lacked subject matter jurisdiction over Plaintiffs' claims. This Court found, however, that the futility exception applied to Plaintiffs' claims because they were predicated on alleged systemic violations

for which there were no adequate administrative remedies.[7] Accordingly, Defendant's Motion to Dismiss for lack of subject matter jurisdiction was denied. On appeal, the Second Circuit affirmed, reasoning that Plaintiffs' Complaint did not challenge the content of the individual student's IEPs, but rather, the School District's total failure to prepare and implement IEPs. J.S. ex rel. N.S. v. Attica Cent. Sch., 386 F.3d 107, 115 (2d.Cir. 2004). As such, the Second Circuit concluded that on its face, Plaintiffs' Complaint did not present a "textbook" case requiring administrative exhaustion, and therefore, held that this Court had subject matter jurisdiction. J.S., 386 F.3d at 114-15.

Plaintiffs seek summary judgment with regard to 9 of  their 41 "Contentions". (Docket No. 194).  Defendant moves for summary judgment dismissing all claims on the grounds that: (1) there is no genuine dispute as to any material fact in support of a denial of FAPE, and (2) Plaintiffs' fail to allege systemic deficiencies because their allegations concern only nuances of individual student IEPs. (Def. Mem. of Law (Docket No. 191-5) at 5-18).[8]

Dealing with the latter argument first, the Second Circuit confirmed that at the pleading stage, the allegations of systemic deficiencies were sufficient. J.S. v. Attica Central Schools, 386 F.3d 107 (2d Cir. 2004). The question now is whether Plaintiffs have

---

[7] As this Court noted, such cases are often class actions. See, e. g., J.G. v. Bd. of Educ. of the Rochester City Sch. Dist., 830 F.2d 444 (2d Cir.1987); Jose P. v. Ambach, 669 F.2d 865 (2d Cir.1982).

[8] In support of its motion, Defendant has filed a memorandum of law, a Rule 56 Statement of Undisputed Facts, with exhibits, including over 2000 pages of Plaintiffs' answers to  interrogatories, and affidavits by Jeanne Bates, Rebecca Green, David Barber, Christine Aguglia, Donna Andre, Janice Beedham, Mary Beth Brotherton-Hardie, Tammy Burrie, Amy Keicher, Michelle Kranz, Kathryn Ludwig, Caroline Schmieder, Loretta Orologio, and Tracy Shrems.  (Docket Nos. 189-192.)  In opposition, Plaintiffs filed an affidavit opposing the motion for summary judgment by Bruce Goldstein, Esq., memorandum of law, a "Response Refuiting Defendant's Statement of Material Facts", exhibits, and affidavits by Catherine Boehm, K.Z., and Danise Levine  (Docket No. 201).

offered supporting evidence. On the record presented, the Court finds that material questions of fact exist on a number of issues relating to procedural and substantive deficiencies in the District's development and implementation of IEPs and whether those deficiencies resulted in a denial of FAPE to Plaintiffs.

Defendant has offered evidence of extensive corrective changes and provided detailed information concerning the breadth of the District's current systems[9], including, but not limited to: templates, forms, communications, the continuum of services provided, numbers of special education students served, screening, evaluations and re-evaluations of special education and Section 504 students, "Child Find" activities, implementation of IEPs and Section 504 Plans, testing and assessments, including psychological, speech/language, physical therapy, occupational therapy, and behavioral assessments, behavioral information plans ("BIPs"), annual goals and short-term objectives with respect to IEPs, services, accommodations, and supports for special education students, CSE meetings and annual reviews, and parental notification related thereto, progress reports, training for staff and personnel concerning IEP responsibilities, "exit summaries" for students departing special education, special class sizes and parental notification related thereto, and classroom observation.[10] (Def. Stmt. of Facts (Docket No. 189-1) , ¶¶ 7-146,153-176, 177-282, 293-318, 318-362).

_____

[9] The majority of Defendant's propounded facts relate to the District's practices, policies, and procedures from 2008 onward, whereas Plaintiffs' allegations concern violations that existed during the 2006-2007 school year.

[10] A complete summary of the District's systems can also be located in the Defendant's Reply Memorandum (Docket No. 206) at pages 11-14. Because Plaintiffs have pled the accessibility issues as violations of Section 504 of the Rehabilitation Act, the remedial measures taken by Defendant with regard to accessibility are discussed in section III.B.2 of this Decision and Order.

Plaintiffs have explicitly and impliedly admitted the vast majority of Defendant's facts propounded by Defendant (Pl. Opp'n (Docket No. 201), ¶¶ 18-20, 40-43; Pl. Resp. to Stmt. of Facts (Docket No. 201-5), p. 8-9, 11-12, 18). They have not provided a counter-statement of material facts in accordance with Local Rule 56(2), but rather respond to blocks of facts propounded by Defendant, relying on their Contentions, which consist of broad allegations implicating the relevant federal statutes and state regulations, and do not refer to specific facts or evidence. A review of the parties' submissions reveals that Defendant did put a number of policy changes into effect subsequent to the school year at issue, 2006-2007, which fully addressed the majority of Plaintiffs' 41 Contentions. Plaintiffs do not contest the fact or effectiveness of the changes and thus, at least partial summary judgment is warranted. To that end, Plaintiffs' cross-motion for partial summary judgment must be denied with respect to those Contentions that have been addressed by the Defendant.

However, as discussed below, Defendant has not offered proof of corrective measures with regard to certain of Plaintiffs' contentions and therefore issues of fact exist.

### Parent Training and Counseling (Contentions 2 and 3)

The IDEA requires that an IEP include a statement of the "related services" to be provided to a student or on the student's behalf. 20 U.S.C. § 1414(d)(1)(A)(i)(IV).  Among those types of related services that a student might require in order to make progress include parent counseling and training. 34 C.F.R. § 300.34(a) (defining related services to include parent counseling and training). New York regulations require that school districts offer training and counseling to parents of a child with autism in order to help the parents implement their child's IEP. See 8 N.Y.C.R.R. § 200.13(d). Likewise, the regulations

provide for training and counseling to parents of a child placed in special classes[11] for the purpose of enabling parents to perform appropriate follow-up intervention activities at home.  See 8 NYCRR 200.6(h)(8).

Plaintiffs Contentions 2 and 3 assert that class members are/were deprived of a FAPE and the IDEA was violated because the District fails to provide parent training or counseling for students classified as autistic and students placed in special classes. (Goldstein Aff., Ex. A). Plaintiff seeks summary judgment on these two Contentions. (Docket No. 194).

In support of their motion, Plaintiffs state that in 75% of student files reviewed, their evidence establishes that Defendant was not compliant with its obligation to provide parent counseling and training to parents of students with autism (Contention 2) and parents of students placed in special classes (Contention 3). (Pl. Stmt. of Facts (Docket No. 194-9), pp. 13-17).

With regard to Contention 2, Plaintiffs state that none of the four reviewed student IEPs for the 2006-2007 school year contained any parent counseling, one student's parents did not receive counseling after November 15, 2006, and one student's file had no documentation of parent counseling and training. (Id., pp.14-15). Defendant acknowledges that no 2006-2007 IEP specifically listed parent training and counseling, but suggests that "there is no basis for any implication that FAPE may have required parent counseling or that the parents wanted or would participate in additional counseling..." (Def. Resp. to Stmt. of Facts (Docket No. 199-2), pp. 27-31). That statement cuts both ways, as there is also

---

[11] Special classes for students with disabilities are based on the similarity of individual needs of the students, with maximum class sizes of twelve, eight, or six students. See 8 N.Y.C.R.R. § 200.6(h).

no indication parent counseling was not required. In short, a question of fact exists.

Contention 3, which alleges that the District failed to provide counseling and training to parents of students who are placed in 6:1:1, 8:1:1, or 12:1:4 classes, is similarly problematic. The facts provided by Plaintiffs indicate that of four student files reviewed, three files revealed that there was no documentation that the students' parents received or were offered counseling, and no IEP for the 2006-2007 contained parent counseling. (Pl. Stmt. of Facts, pp.15-16). Defendant's response is twofold: one, that the state regulations only provide for parent counseling where "appropriate", and two, that parents were offered counseling but were "not involved in the student's education" (Def. Resp. to Stmt. of Facts at 32-36).

The Court notes out that 8 NYCRR 200.6(h)(8) reads, "For parents of students placed in special classes . . . provision shall be made for parent counseling and training as defined in section 200.1(kk) of this Part for the purpose of enabling parents to perform appropriate follow-up intervention activities at home." Section 200.1(kk) defines parent counseling and training as, "assisting parents in understanding the special needs of their child; providing parents with information about child development; and helping parents to acquire the necessary skills that will allow them to support the implementation of their child's individualized education program." Nowhere in the regulations does it state that parent training and counseling shall be provided "where appropriate".  With regard to Defendant's second response, questions of fact remain as to whether parents were offered counseling and whether parent counseling was required for these students.

There are questions of fact as to whether parent training and counseling would have been important to these students' ability to progress and whether parents were indeed

offered said training and counseling as required by New York State regulations. Accordingly, summary judgment is not warranted for either party.

With respect to Contentions 2 and 3, which relate to parent training and counseling, Defendant's motion is denied and Plaintiffs' cross-motion for summary judgment is also denied.

### Committee on Special Education ("CSE") (Contention 11)

Under New York law, a CSE meeting must consist of (1) the student's parents; (2) at least one of the student's regular education teachers; (3) at least one of the student's special education teachers or "providers;" (4) a representative of the school district who can comment on the school's education curriculum and resources; (5) a school psychologist; (6) an individual who can interpret the instructional implications of evaluation results; (7) any other individual with knowledge or expertise regarding the student; and (8) the student, if appropriate. 8 N.Y.C.R.R. § 200.3(a)(1). Federal law requires similar membership in the team that creates the IEP, except federal law does not require a school psychologist. 20 U.S.C. § 1414(d)(1)(B).

In response to Plaintiffs' Contention that the composition of the District's CSE is not compliant with the appropriate regulations (Contention 11), Defendant asserts that the District CSE varies for each student and is not a static group of individuals. (Def. Stmt. of Facts, ¶¶ 283-284). On the present record, the composition of the CSEs is unknown, and a material issue of fact exists as to whether the District failed to offer a FAPE to members of the class based on improper composition of the CSE. Accordingly, Defendant's motion for summary judgment must be denied with respect to Contention 11.

**Transition Services (Contentions 23-36)**

As defined by New York law, transition services are composed of activities for disabled students aimed at improving a student's academic and functional achievement so that the student may more easily adapt to post-school-related activities, including college, employment, and independent living. 8 N.Y.C.R.R. § 200.1(fff). Pursuant to § 200.4(d)(2)(ix), all proposed IEPs for students fifteen years or older shall include:

> (a) under the student's present levels of performance, a statement of the student's needs, taking into account the student's strengths, preferences and interests, as they relate to transition from school to post-school activities as defined in section 200.1(fff) of this Part;

> (b) appropriate measurable postsecondary goals based upon age appropriate transition assessments relating to training, education, employment and, where appropriate, independent living skills;

> (c) a statement of the transition service needs of the student that focuses on the student's courses of study, such as participation in advanced-placement courses or a vocational education program;

> (d) needed activities to facilitate the student's movement from school to post-school activities, including instruction, related services, community experiences, the development of employment and other post-school adult living objectives and, when appropriate, acquisition of daily living skills and functional vocational evaluation; and

> (e) a statement of the responsibilities of the school district and, when applicable, participating agencies for the provision of such services and activities that promote movement from school to postschool opportunities, or both, before the student leaves the school setting.

8 N.Y.C.R.R. § 200.4(d)(2)(ix). The IDEA has a parallel requirement for all proposed IEPs for students sixteen years or older. <u>See</u> 20 U.S.C. § 1414(d)(1)(A)(i)(VIII).

22

Defendant has not responded with specificity to Plaintiffs' contentions relating to transition services. While the District provides transition plans and services and involves outside agencies and services (Def. Stmt. of Facts ¶¶ 147-152), it does not address its implementation of those services in the IEPs. Specifically, whether student IEPs include adequate transition activities, goals, and/or services (Contention 23), whether student IEPs include long-term adult outcomes in the areas of instruction, employment, daily living skills, recreation, and community participation (Contention 24), whether student IEPs include anticipated transition services (Contention 26), whether the District coordinates activities among the student, parents, educational professionals and community agencies to develop post-school adult living objectives (Contention 25), whether the District identifies transition services that a student would require when exiting school (Contention 27), whether the District coordinates activities among students, parents, educational professionals and community agencies to facilitate the student receiving community experiences (Contention 28), whether the District develops transition goals relating to a student's identified long-term adult outcomes (Contention 29), whether the District coordinates activities among students, parents, educational professionals and community agencies to facilitate the student's movement to receive adult services (Contention 30), whether the present levels of performance in IEPs reflect a student's needs in the area of transition (Contention 31); whether the District identifies adult service providers and included adult service providers on IEPs (Contention 32), whether the District developed a coordinated set of transition activities relating to the student's identified long-term adult outcomes (Contention 33), whether the District conducts appropriate transition assessments (Contention 35); and whether the District identifies and/or documents a student's progress toward measurable

post-secondary goals (Contention 36).

Because there are material issues of fact as to whether the District failed to follow IDEA by providing appropriate transition services to members of the class, Defendant's summary judgment motion must fail.

In sum, Defendant's motion for summary judgment is granted to the extent that Plaintiffs' Contentions 1, 4-10, 12-20, 23-26, and 37-41 have been addressed through various policy changes that occurred during the pendency of this lawsuit.[12]

Defendant's motion is denied with regard to Contentions 2, 3, 11, 27-36, on which they have offered no proof of specific corrective measures.

Because Defendant has already been granted summary judgment on Contentions 1 and 4-9, Plaintiffs' motion for summary judgment is denied as to those Contentions. Nor is Plaintiff entitled to summary judgment on Contentions 2 and 3, which deal with parent counseling and training, because triable issues of fact exist as to those Contentions. Plaintiffs' motion is therefore denied in its entirety.

**2.      Section 504 Claims**

Plaintiff's second cause of action relates to appropriate accessibility to services and programming for physically disabled students, which Plaintiffs have framed as a nondiscrimination claim arising under Section 504 of the Rehabilitation Act. (Compl., ¶

---

[12] The Court notes that substantial progress has been made since the inception of this lawsuit, which has effectively narrowed the issues. The Court suggests that the parties consider mediating the remaining issues, rather than continue on a course of costly, time-consuming litigation. See, e.g., Manual for Complex Litigation Second § 23.11(1985) ("Many more cases are concluded by settlement than by trial. This reflects the fact that most lawyers and litigants prefer a negotiated solution to the costs, time, and uncertainty inherent in trial. Because both the expense and risk of loss are magnified in complex cases, such actions are even more amenable to compromise than routine cases . . . . ")

108).[13]

Section 504 prohibits federally funded state and local educational agencies from discriminating against students with disabilities. See J.D. v. Pawlett Sch. Dist., 224 F.3d 60, 70 (2d Cir. 2000); 29 U.S.C. § 794(a). The scope of protection afforded by section 504 is somewhat different from the protection afforded under the IDEA, which provides "relief from inappropriate educational placement decisions, regardless of discrimination." Weixel v. Bd. of Educ. of the City of New York, No. 97 Civ. 9367, 2000 WL 1100395, at *4 (S.D.N.Y. Aug. 7, 2000) (internal citations omitted).

Section 504, in pertinent part, provides that "[n]o otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). To prove a violation of the Rehabilitation Act, a plaintiff must show that: (1) he is an individual with a disability; (2) he is otherwise qualified for benefits under a federally funded program; and (3) he has been denied those benefits because of his disability. See Rothschild v. Grottenthaler, 907 F.2d 286, 289-90 (2d Cir.1990); B.D. v. DeBuono, 130 F.Supp.2d 401, 438 (S.D.N.Y. 2000) (citing D'Amico v. City of New York, 132 F.3d 145 (2d Cir.1998)); see also Weixel v. Board of Educ. of City of New York, 287 F.3d 138, 146-47 (2d Cir. 2002).

---

[13] While the Complaint sets forth "six" legal claims, only five were actually enumerated, and all of the claims were based on essentially the same allegations. This Court read the Complaint as setting forth two causes of action arising under separate, but related statutes. It appears that Plaintiffs sought to confine their allegations relating to accessibility of the District's facilities to their Rehabilitation Act claim, which, as discussed above, lacks factual and evidentiary support. (Compl. ¶ 108). However, to the extent that Plaintiffs seek to re-allege their FAPE/IDEA claims under Section 504 (Compl., ¶ 110), such claims must be dismissed because Plaintiffs have not asserted discriminatory actions related thereto. See Zahran ex rel. Zahran v. N.Y. Dep't of Educ., 306 F.Supp.2d 204, 213-14 (dismissing Rehabilitation Act claim because the claims were "substantially the same as that of the IDEA claim," which were "essentially challenges to the program itself, not [to] any type of discriminatory decisions").

"Section 504 addresses discrimination against disabled students, rather than inappropriate special education services which can be the basis of IDEA claims." S.W. by J.W. v. Warren, 528 F.Supp.2d 282, 289 (S.D.N.Y. 2007). "Thus, 'something more than a mere violation of the IDEA is necessary in order to show a violation of Section 504 in the context of educating children with disabilities, i.e., a plaintiff must demonstrate that a school district acted with bad faith or gross misjudgment.'" Id. (quoting Scaggs v. N.Y. State Dep't of Educ., No. 06–CV–0799, 2007 WL 1456221, at *15 (E.D.N.Y. May 16, 2007) (internal quotation omitted); see also Pinn ex rel. Steven P. v. Harrison Cent. Sch. Dist., 473 F.Supp.2d 477, 483 (S.D.N.Y. 2007) (requiring plaintiff to demonstrate bad faith or gross misjudgment in Section 504 claim asserting denial of a free appropriate public education) (citations omitted); B.D., 130 F.Supp.2d at 439 ("I therefore hold that in order to prevail on their Rehabilitation Act claims, plaintiffs must show bad faith or gross misjudgment on the part of the defendants."); accord, E.H. v. Board of Educ. of Shenendehowa Central Sch. Dist., 361 Fed.Appx. 156 (2d Cir. 2009) (unpublished opinion) ("Even if we were to conclude that the School District had violated the IDEA, such a violation, without more, would be insufficient to support a claim of disability-based discrimination under the ADA or Section 504 of the Rehabilitation Act.").

Based on the facts submitted by both parties, there is no dispute that Plaintiffs meet the first requirement of a Section 504 claim in that they are disabled individuals entitled to benefits. Yet Plaintiffs set forth no facts that would support a finding of bad faith or gross misjudgment. The District has undertaken several construction, renovation, and modification projects on its three school buildings  since 1999 which have since brought them into compliance with federal regulations. (Def. Stmt. of Facts, ¶ 371). Such projects

include the addition of special classrooms, installation of a wheelchair ramp, improved signage, accessible van parking, accessible classrooms, locker rooms and restrooms, accessible swimming pool serviced by a lift, elevator access, accessible public telephones, and accessible entrances. (Id., ¶¶ 374-536). While the Plaintiffs point to a handful of items of non-compliance with regard to accessible facilities for mobility-impaired students (Pl. Resp., p.18), they have not asserted, much less presented, any evidence that Defendant's non-compliance is the result of bad faith or gross misjudgment and discrimination against Plaintiffs.

Accordingly, this Court finds that Defendant is entitled to Summary Judgment with respect to Plaintiffs' claims brought under Section 504 of the Rehabilitation Act.

### 3.    Declaratory Judgment

Plaintiffs argue that the Defendant's purported facts relate to activities subsequent to the 2006-2007 school year, and because those years were not included in the discovery process, they should not be considered in the liability phase of this lawsuit.  It is significant, however, that at this point in the litigation, Plaintiffs only seek a declaratory judgment and monitoring. (Pl. Resp. at 3 (Docket No. 201-5)).

"[A] declaratory judgment is a form of relief, based on completed or threatened actions, that operates to adjust the rights of the parties when the award of a prospective coercive judgment is inappropriate for any number of reasons." 12-57 Moore's Federal Practice - Civil § 57.04.  In order for declaratory relief to be appropriate, there must exist a "live dispute" between parties who have adverse interests "of sufficient immediacy and reality." Cutaiar v. Marshall, 590 F.2d 523, 527 (3rd Cir. 1979) (citations omitted). The case must present a dispute that is "consonant with the exercise of the judicial function and

appropriate for judicial determination." Pub. Serv. Comm'n of Utah v. Wycoff Co., Inc., 344 U.S. 237, 242 (1952) (internal quotation omitted). "The two criteria guiding the policy in favor of rendering declaratory judgments are (1) whether the judgment will serve a useful purpose in clarifying and settling legal relations in issue, and (2) whether it will terminate and afford relief from the uncertainty, insecurity and controversy giving rise to the proceeding." B.D. v. DeBuono, 130 F.Supp.2d 401, 430 (S.D.N.Y.  2000) (citing Continental Casualty Co. v. Coastal Savings Bank, 977 F.2d 734, 737 (2d Cir. 1992)). "If either prong of the test is met, the request for declaratory judgment should be entertained." Id.

Here, Plaintiffs simply seek a declaration that Defendant's past actions violated the Constitution. Under the present circumstances, such a declaration would not resolve the rights or liabilities of either party because it would not resolve any existing legal disagreement or provide compensation for any past unlawful acts. Accordingly, this matter does not present any "live dispute" appropriate for judicial involvement. A declaratory judgment in this case would in substance be an "advisory opinion," notwithstanding the fact that it concerns actions that have taken place in the past. Therefore, this matter is neither "consonant with the exercise of the judicial function" nor "appropriate for judicial determination." Pub. Serv. Comm'n of Utah, 344 U.S. at 242; see S. Jackson & Son, Inc. v. Coffee, Sugar & Cocoa Exchange Inc., 24 F.3d 427 (2d Cir. 1994) ("Such a declaration [of past wrongdoing] seemingly would verge on the status of an advisory opinion, which, of course, no federal court is empowered to deliver.").

However, resolving the legality of *ongoing* school district practices would be useful because it will give the Defendant an opportunity to reform those practices without harming

members of the class or incurring the expense to fight off repeated future litigation. See Browning Debenture Holders' Comm. v. DASA Corp., 524 F.2d 811 (2d Cir.1975) ("When the behavior complained of is of such a nature that it might predictably be repeated again ... a prior declaratory judgment may serve the useful purpose of facilitating an injunction at a future date.").  For purposes of this motion, the Court presumes that any remedial changes made by the District subsequent to the 2006-2007 school year are being complied with and has thus focused on whether material issues of fact surround the alleged uncorrected practices.

**D.    Rule 17 Motion**

Defendant moves to dismiss the six named student Plaintiffs pursuant to Rule 17 of the Federal Rules of Civil Procedure on the grounds that one is deceased and five have attained age 18, and that the parent representatives no longer meet the requirements of Rule 17.[14]  (Docket Nos. 193-3, 208).  Defendant further requests an Order from this Court providing 30 days in which the now-adult student Plaintiffs must affirmatively elect to continue their claims in their own name. (Id.)

Rule 17 of the Federal Rules of Civil Procedure provides that "[a]n action must be prosecuted in the name of the real party in interest." Fed.R. Civ.P. 17(a)(1). The Court may not dismiss an action for a failure to prosecute in the name of the real party in interest until, after an objection, reasonable time is given to correct any defect. Fed.R.Civ.P. 17(a)(3)."This provision requires the defendant to object in time to allow the opportunity for

---

[14] Defendant clarifies that the adequacy of the named Plaintiffs to represent the absent class members is not in dispute for purposes of this motion. (Def. Reply Mem. (Docket No. 207), p. 4). Adequacy of representation is an essential prerequisite to the right to maintain a class action.  See Fed.R.Civ.P. 23(a)(4).

joinder of the ostensible real party in interest, and the defense may be waived if the defendant does not timely object." In re Signal Intern., LLC, 579 F.3d 478, 487-88 (5th Cir. 2009); see also Steger v. General Elec. Co., 318 F.3d 1066 (11th Cir. 2003) (real-party-in-interest defense is not jurisdictional and freely waivable); United HealthCare Corp. v. American Trade Ins. Co., Ltd., 88 F.3d 563 (8th Cir. 1996) (Defendant waived real-party-in-interest defense by failing to raise it in timely fashion, where defendant was on notice of plaintiff's claims for nearly two years before first raising defense in pretrial conference one week before trial). The defendant timely objects "so long as joinder of the real party in interest remains practical and convenient." In re Signal, 579 F.3d at 488 (internal quotation omitted).

This Court finds Defendant's Rule 17 objection is untimely. Of the six children that turned eighteen during the course of this lawsuit, three "aged-out" by April, 2003, over eight years ago (Docket No. 193-1, ¶ 11). K.Z. turned eighteen in November, 2008 (Id., ¶ 6), C.Z. turned eighteen in July of this year, and S.H. passed away in 2003 (Id., ¶ 11, Docket No. 208-1, ¶ 3).  Notably, Defendant raised no Rule 17 objection when this Court certified the class in 2006, determining that the parents were adequate class representatives (Docket No. 61) or at any other time during these proceedings, which involve a substantial history of motion practice. Only now does Defendant object to the representatives' status as the real parties in interest.  This Court agrees with Plaintiffs that any joinder or substitution of the representative Plaintiffs at this stage of the proceedings will only result in a further delay in a final adjudication of this litigation, soon to be proceeding into its twelfth year.

Accordingly, Defendant's motion must be denied.

**E.     Motion to Preclude**

On December 17, 2008, during the discovery phase of litigation, Defendant filed a motion in limine to preclude the introduction of evidence related to the absent class members. (Docket No. 125).  Although Defendant's motion is entitled "Motion in Limine to Preclude Evidence", the substance of the motion challenges the propriety of class certification on the basis that the elements of Rule 23 have not been met. (Docket No. 1258-3, pp. 2-5).  Specifically, Defendant contends that Plaintiffs' allegations concern the IEPs of *individual* students and not systemic violations so as to be appropriate for class action litigation. These issues have been resolved earlier in this Decision and Order, see Discussion supra at III.A., as well as in this Court's previous decisions. (Docket Nos. 61, 99).  Defendant's motion is therefore denied.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motions to dismiss parties  and to preclude evidence are denied, as is Defendant's motion for class decertification. Further, Defendant's motion for summary judgment is granted in part and denied in part. Plaintiffs' motion for partial summary judgment is denied.

## V.  ORDERS

IT HEREBY IS ORDERED, that Defendant's Motion to Preclude Evidence (Docket No. 125), Motions to Dismiss Parties (Docket Nos. 193, 208), and Motion to Decertify the Class (Docket No. 160) are DENIED.

FURTHER, that Defendant's Motion for Summary Judgment (Docket No. 189) is DENIED in part and GRANTED in part.

FURTHER, that Plaintiffs' Motion for Partial Summary Judgment (Docket No. 194)

is DENIED.

      SO ORDERED.

Dated:   September 25, 2011
         Buffalo, New York

/s/William M. Skretny
WILLIAM M. SKRETNY
Chief Judge
United States District Court
